IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| Linda Pierce and Nathan Thomas, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LendingTree, Inc.; LendingTree, LLC; and QuoteWizard.com, LLC,<br><br>Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

**INTRODUCTION**

1. Data companies are acutely aware of the critical importance of cybersecurity in an increasingly interconnected world. With the exponential growth of cloud storage, companies are entrusted with sensitive information, ranging from personal details to financial records.

2. Defendants did not keep personal information secure.[1]

3. Defendants have also long understood the importance of robust cybersecurity, as discussed herein, to protect the data of its customers, employees, and subscribers.

4. Information security policies and practices are imperative to ensuring that sensitive information is not exposed to unauthorized third parties. These exposures, commonly referred to as "data breaches" can cause significant harm to individuals—exposing them to fraud

---

[1] The Defendants in this complaint are LendingTree, LLC, and Quotewizard.com, LLC (together, "Lending Tree").

and attempted fraud, identity theft, reputational harm, and the continuing risk of harm that results in criminals having their information.

5. A single data breach can result in catastrophic consequences for individuals. As a result, and based upon legal and industry-standard requirements, companies prioritize robust cybersecurity measures.

6. In this case, however, none of the Defendants implemented three of the most basic and rudimentary cybersecurity policies to protect Personal Information, including most prominently, multifactor authentication.[2] The foreseeable result? A data breach.

7. Defendants use a cloud storage company called Snowflake to keep Personal Information secure. But that information was not secure. The cybercriminal known as UNC5537 used compromised login credentials for Defendants, plugged them in to Defendants' Snowflake accounts, and successfully exfiltrated Personal Information relating to hundreds of millions of consumers.

8. UNC5537's success was made possible by basic data security failings on the part of Defendants. These companies collectively flouted relevant governmental guidance, regulations, statutes, and industry standards.

9. The Data Breach's foreseeable consequences are neither imaginary nor hypothetical: shortly after the Data Breach, sensitive information previously stored by Defendants

---

[2] "Personal Information," as used herein, refers to that information which was exposed to cybercriminals through the Data Breach. While the information exposed varies from each Defendant, each protected that information behind credentials (i.e., a username and password), intending that it not be exposed to unauthorized third parties. As alleged herein, inadequate, negligent, and reckless cybersecurity practices resulted in that information being exposed.

with Snowflake began appearing for sale on the dark web.[3] The harm resulting from exposing the information cannot be undone.

10. Plaintiffs and Class Members[4] now face the real and actual harm that the Data Breach has caused them and will continue to cause them. Not only have cybercriminals obtained valuable and sensitive Personal Information about them, but that information has been obtained by other criminals, and offered for resale to still more criminals. As a result, Plaintiffs and Class Members have already experienced fraud or potential fraud, an invasion of their privacy, time and expenses spent mitigating the imminent and substantial risk of data misuse, and are at significant risk of identity theft, reputational harm, and other injuries.

11. Each of the Defendants bears responsibility for their role in the Data Breach. Despite their experience and sophistication, Defendants were negligent (at best) and reckless (at worst) for failing to implement basic and routinely required cybersecurity practices to protect Plaintiffs' and Class Members' Personal Information.

## PARTIES

**I. Defendants**

12. **LendingTree, Inc.** is an online consumer platform connecting consumers with financial services incorporated under Delaware law, with its principal place of business located at 1415 Vantage Park Drive, Suite 700, Charlotte, North Carolina.[5]

---

[3] Snowflake Breach Threat Actor Offers Data of Cloud Company's Customers, SOCRadar, https://socradar.io/overview-of-the-snowflake-breach/ (last accessed Jan. 13, 2024).

[4] "Class Members" refers to those individuals who were impacted by the Data Breach, as alleged herein. Specific class definitions for each Defendant are provided in the relevant sections.

[5] LendingTree, Inc. Annual Report (Form 10-K) (Feb. 28, 2024) ("LendingTree 2023 10-K"), https://www.sec.gov/ix?doc=/Archives/edgar/data/1434621/000143462124000006/tree-20231231.htm.

13.     **LendingTree, LLC** is an online lending company incorporated under Delaware law, with its principal place of business located at 1415 Vantage Park Drive, Suite 700, Charlotte, North Carolina.[6] LendingTree, Inc. is the parent of LT Intermediate Company, LLC, which holds all of the outstanding ownership interests of LendingTree, LLC.[7]

14.     **QuoteWizard.com, LLC** is an insurance comparison company, and a wholly owned subsidiary of LendingTree.[8] QuoteWizard is a Delaware limited liability company, with its principal place of business located at 1415 Vantage Park Drive, Suite 700, Charlotte, North Carolina.[9]

## II.  Plaintiffs

*Linda Pierce*

15.     Plaintiff Linda Pierce is a citizen of Texas residing in Jacksonville. Plaintiff Pierce recalls applying for a loan through a LendingTree web-based application in the past 1-2 years and in so doing, provided LendingTree with at least her name, home address, email address, phone number, date of birth, driver's license number, Social Security number, and financial information.

16.     Plaintiff Pierce received a data breach notice letter, via U.S. mail, directly from QuoteWizard, dated July 30, 2024.

---

[6]     LendingTree, LLC 2023 Annual Report, N.C. Sec'y of State (Mar. 20, 2024), https://www.sosnc.gov/online_services/business_registration/flow_annual_report/7314197.

[7]     LendingTree 2023 10-K at 7.

[8]     LendingTree, Inc. Form 8-K/A Exhibit 2.1 (Oct. 12, 2018), https://www.sec.gov/ix?doc=/Archives/edgar/data/0001434621/000143462124000006/tree-20231231.htm.

[9]     QuoteWizard.com, LLC 2023 Annual Report, N.C. Sec'y of State (Jan. 8, 2024), https://www.sosnc.gov/online_services/business_registration/flow_annual_report/15286870.

17. Since the Data Breach, Plaintiff Pierce has received multiple emails from a credit monitoring service that her Personal Information was found on the dark web. Since the Data Breach, Plaintiff Pierce has experienced an increase in spam and receives numerous spam calls and multiple spam texts a day.

18. Since the Data Breach, Plaintiff Pierce has spent approximately 30 hours investigating and mitigating against the substantial risks presented by the theft of her Personal Information. These mitigation efforts have included freezing her credit with Experian, registering for credit monitoring services, monitoring her credit accounts and reports, and changing her passwords regularly.

19. As a result of the Data Breach, Plaintiff Pierce has suffered injury and damages, including but not limited to, the unauthorized use of her stolen Personal Information; the substantial risk of identity theft and reasonable mitigation efforts spent to protect against such risks, including time and expenses spent obtaining credit monitoring services and reviewing financial accounts for fraudulent activity; loss of property and value of that property with respect to the inability to control use of her Personal Information; invasion of her privacy; and emotional distress and worry resulting from the theft of her Personal Information and responding to identity theft.

20. Plaintiff Pierce is very careful about sharing her own Personal Information and has never knowingly transmitted unencrypted Personal Information over the internet or any other unsecured source. Plaintiff Pierce is diligent about keeping hard copy documents containing Personal Information secure, and is diligent about the online security of her accounts.

5

*Nathan Thomas*

21. Plaintiff Nathan Thomas is a citizen of Washington residing in Bellingham, Washington. Plaintiff N. Thomas is a frequent user of LendingTree and received a notice letter from QuoteWizard dated July 30, 2024. In order to utilize services from LendingTree, Plaintiff N. Thomas provided LendingTree with his name, address, email address, phone number, and date of birth.

22. After the Data Breach, in June 2024, Plaintiff N. Thomas suffered multiple fraudulent charges totaling approximately $400. Near the end of 2024, Plaintiff N. Thomas noticed that an unauthorized bank account was opened in his name.

23. As a result of the Data Breach, Plaintiff N. Thomas has suffered injury and damages, including but not limited to, the substantial risk of identity theft and reasonable mitigation efforts spent to protect against such risks, including time and expenses spent reviewing financial accounts for fraudulent activity; loss of property and value of that property with respect to the inability to control use of his Personal Information; invasion of his privacy; and emotional distress and anxiety resulting from the theft of his Personal Information and responding to identity theft.

24. Plaintiff N. Thomas is very careful about sharing his Personal Information and has never knowingly transmitted unencrypted Personal Information over the internet or any other unsecured source. Plaintiff N. Thomas is diligent about keeping hard copy documents containing Personal Information secure, and is diligent about the online security of his accounts.

**JURISDICTION AND VENUE**

25. This Court has subject-matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d)(2), because this is a class action in which the matter in

controversy exceeds the sum of $5,000,000, and Defendants are citizens of States different from that of at least one Class member. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

26. Venue is appropriate in this Court because Defendants are domiciled in this State, and have conducted business in this State. The Court has personal jurisdiction over the Defendants because they are all headquartered in this State.

## FACTUAL ALLEGATIONS

27. The events leading up to the Data Breach and its fallout are summarized in a June 10, 2024 report published by Mandiant (the "Mandiant Report"), a cybersecurity firm that assisted Snowflake in its investigation of the Data Breach.[10]

28. The Data Breach occurred because Defendants did not follow basic, routinely-adopted, best-practice, necessary, and standard cybersecurity guidelines.

29. LendingTree has disclosed that certain types of Personal Information were exposed in the Data Breach.

- **LendingTree**: customer contact information (names and addresses), driver's license number, partial credit card number, automotive history, insurance quote-related information.[11]

---

[10] Mandiant, *UNC5537 Targets Snowflake Customer Instances for Data Theft and Extortion*, Google Cloud (June 10, 2024), https://cloud.google.com/blog/topics/threat-intelligence/unc5537-snowflake-data-theft-extortion ("*Mandiant Report*"). Since Snowflake had a hand in the *Mandiant Report*, the events are likely worse than presented, and will be clarified in discovery. *See also Snowflake Breach: Hacker Confirms Access Through Infostealer Infection*, Hudson Rock, https://archive.is/tljkW (archived website).

[11] QuoteWizard Notice of Data Breach (July 30, 2024) ("QuoteWizard Notice"), https://ago.vermont.gov/sites/ago/files/documents/2024-08-09%20QuoteWizard%20Data%20Breach%20Notice%20to%20Consumers.pdf; Jonathan Greig, *LendingTree confirms that cloud services attack potentially affected subsidiary*, The Record (June 10, 2024), https://therecord.media/lendingtree-quotewizard-cybersecurity-incident-snowflake; Zach Whittaker, *What Snowflake isn't saying about its customer data breaches*,

30. The Personal Information exposed is extremely valuable and can be used for a number of nefarious purposes.

31. Exposed Social Security numbers can be used to commit identity theft and open accounts in someone's name without their consent, exposed payment card numbers can be used to commit fraud, history of purchases can be used to send phishing emails, and insurance information can be used to steal someone else's insurance coverage. The risks of data breaches are well known and documented, and Defendants were well aware of the risks.

32. The exposure of Personal Information in the Data Breach has subjected the Plaintiffs to actual and imminent harm that is concrete and particularized.

## CLASS ACTION ALLEGATIONS

33. Plaintiffs bring this action on their own behalf, and on behalf of the following Class:

> All individuals residing in the United States whose Personal Information was identified as compromised in the Data Breach by a Defendant.

34. Excluded from the Class are Defendants' officers and directors, any entity in which a Defendant has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendants. Excluded also from the Class are members of the judiciary to whom this case is assigned, their families and members of their staff.

35. Plaintiffs reserve the right to amend or modify the definition of the Class or create additional subclasses as this case progresses.

36. **Numerosity.** The members of the Class are so numerous that joinder of all of them is impracticable.

---

TechCrunch (June 7, 2024), https://techcrunch.com/2024/06/07/snowflake-ticketmaster-lendingtree-customer-data-breach/.

37. **Commonality.** There are questions of fact and law common to the Class, which predominate over individualized questions. These common questions of law and fact include, but are not limited to:

- Whether Defendants had a duty to protect the Personal Information of Plaintiffs and Class Members, and whether they breached that duty.

- Whether Defendants knew or should have known that its data security practices were deficient.

- Whether Defendants' data security systems were consistent with industry standards prior to the Data Breach.

- Whether Defendants' failure to require customers to implement multi-factor authentication ("MFA"), employ credential rotation, and employ other industry standard data security measures violated a standard of care or laws.

- Whether Plaintiffs and Class Members are entitled to actual damages, punitive damages, treble damages, statutory damages, nominal damages, general damages, and/or injunctive relief.

38. **Typicality.** Plaintiffs' claims are typical of those of other Class Members because the Plaintiffs' Personal Information, like that of every other Class Member, was compromised in the Data Breach.

39. **Adequacy of Representation.** Plaintiffs will fairly and adequately represent and protect the interest of the Class Members. Plaintiffs' Counsel are competent and experienced in litigating class actions.

40. **Predominance.** Defendants engaged in a common course of conduct toward the Plaintiffs and Class Members, in that their data was stored on the same Snowflake data cloud network and unlawfully accessed in the same manner. The common issues arising from Defendants' conduct affecting Class Members listed above predominate over any individualized issues. Adjudication of these common issues in a single action will advance judicial economy.

41. **Superiority.** A class action is superior to other available methods for the fair and efficient adjudication of the claims of the Class. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation.

42. **Injunctive Relief.** Defendants have acted on grounds that apply generally to the Class as a whole such that class certification, injunctive relief, and declaratory relief are appropriate on a classwide basis.

43. **Issue Certification.** Likewise, certain issues are appropriate for certification because such claims present common issues whose resolution would advance the disposition of this matter.

44. **Identification of Class Members via Objective Criteria**. Finally, all members of the proposed Class are readily identifiable using objective criteria from Defendants' records

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
**Negligence**
*On behalf of All Plaintiffs and the Class*

45. Plaintiffs repeat and re-allege the allegations above as if fully set forth herein.

46. Defendants owed a duty under common law to Plaintiffs and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, and deleting their Personal Information in its possession from being compromised, stolen, or misused by unauthorized persons.

47. Specifically, this duty included, among other things: (a) implementing industry standard data security safeguards to protect the Personal Information of Plaintiffs and Class Members relating to MFA, rotating credentials, and restricting access privileges; (b) maintaining, testing, and monitoring security systems to ensure that Personal Information was adequately

secured and protected; and (c) implementing intrusion detection systems and notifying customers of suspicious intrusions.

48. Defendants' duty to use reasonable care arose from several sources, as described herein, including that Defendants the information they were storing was sensitive, and that failing to take adequate steps to secure and protect the data would foreseeably lead to a Data Breach which could injure individual consumers.

49. Defendants had a common law duty to prevent foreseeable harm to others. This duty existed because Defendants stored valuable Personal Information that is routinely targeted by cyber criminals. Plaintiffs and Class Members were the foreseeable and probably victims of any compromise to inadequate data security practices maintained by Defendants.

50. Defendants breached their duty owed to the Plaintiffs and Class Members by failing to maintain adequate data security practices that conformed with industry standards, and were therefore negligent.

51. But for Defendants' negligence, the Personal Information of the Plaintiffs and Class Members would not have been stolen by cybercriminals in the Data Breach.

52. As a direct and proximate result of Defendants' breach of its duties, Plaintiffs and Class Members have suffered injuries as detailed herein.

53. As a direct and proximate result of Defendants' negligence, Plaintiffs and Class Members are entitled to damages, including compensatory, punitive, nominal damages, and/or general damages in an amount to be proven at trial.

### SECOND CLAIM FOR RELIEF
### Violation of Applicable State Consumer Protection Laws
*On behalf of Plaintiffs the Class*

54. Plaintiffs repeat and re-allege the allegations above in paragraphs 1 through 44 as if fully set forth herein.

55. Consumer protection statutes exist to ensure that consumers are protected from unfair, deceptive, and unlawful practices.

56. Plaintiffs are "consumers" based upon appliable state consumer protection statutes, and those statutes were enacted to ensure that Defendants did not engage in unfair, deceptive, and unlawful practices while engaging in trade or commerce.

57. Defendants' conduct offends public policy.

58. As a direct and proximate result of Defendants' unfair trade practices, Plaintiffs and Class Members are entitled to injunctive relief, damages, including actual damages in an amount to be proven at trial or statutory damages, whichever is greater, treble damages of actual damages, and reasonable attorneys' fees, as applicable under various consumer protection statutes.

59. This cause of action will be amended prior to trial based upon discovery and choice of law.

**RESERVATION OF RIGHTS TO ASSERT ADDITIONAL CLAIMS FOR RELIEF**

60. Plaintiffs have asserted claims in this complaint in order to confer subject matter jurisdiction over Defendants so that this case may be transferred to the District of Montana by the Judicial Panel on Multidistrict Litigation.

61. To the extent this case is transferred back to this Court for trial, Plaintiffs reserve the right to assert additional causes of action or amend their causes of action as applicable and based upon discovery and motion practice in the MDL.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the Classes set forth herein, respectfully request the following relief:

A. That the Court certify this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure; declare that Plaintiffs are the proper class representatives; and appoint Plaintiffs' counsel as Class Counsel;

B. That the Court grant permanent injunctive relief to prohibit and prevent Defendants from continuing to engage in the unlawful acts, omissions, and practices described herein;

C. That the Court award Plaintiffs and Class Members compensatory, consequential, general, and/or nominal damages as appropriate, for each count as allowed by law in an amount to be determined at trial;

D. That the Court award punitive or exemplary damages, to the extent permitted by law;

E. That the Court order disgorgement and restitution of all earnings, profits, compensation, and benefits received by Defendants as a result of their unlawful acts, omissions, and practices;

F. That Plaintiff be granted the declaratory and injunctive relief to prevent further injuries from manifesting as alleged herein;

G. That the Court award to Plaintiff the costs and disbursements of the action, along with reasonable attorneys' fees, costs, and expenses;

H. That the Court award pre-and post-judgment interest at the maximum legal rate and all such other relief as it deems just and proper; and

I. Any other relief that the Court deems just and proper.

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial in the instant action.

Dated: February 3, 2025

Respectfully submitted by:

*/s/ Scott C. Harris*
Scott C. Harris (NC Bar No. 35328)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
900 W. Morgan Street
Raleigh, NC 27603
Telephone: (919) 600-5003
sharris@milberg.com

Jason S. Rathod
**Migliaccio & Rathod LLP**
412 H St NE, Suite 302
Washington DC 20002
Tel. 202.470.3520
jrathod@classlawdc.com

John Heenan
**Heenan & Cook**
1631 Zimmerman Trail
Billings, MT 59102
Tel. 406.839.9091
john@lawmontana.com

Amy Keller
**DiCello Levitt LLP**
Ten North Dearborn, Sixth Floor
Chicago, Illinois 60602
Tel. 312.214.7900
akeller@dicellolevitt.com

J. Devlan Geddes
**Goetz, Geddes & Gardner P.C.**
35 N. Grand Ave.
Bozeman, MT 59715
Tel. 406.587.0618
devlan@goetzlawfirm.com

Raphael Graybill
**Graybill Law Firm, PC**
300 4th Street North
Great Falls, MT 59401
Tel. 406.452.8566
raph@graybilllawfirm.com

*Counsel for Plaintiffs and the Putative Class*